CLARENCE E. McMANUS, Judge.
i statement of the case
On April 13, 2009, the Jefferson Parish District Attorney’s Office charged defendant, James Veal, by bill of information with two counts of distribution of cocaine (Counts I and II), in violation of LSA-R.S. 40:967(A). Defendant pled not guilty to the charges on April 14, 2009.
On May 12, 2009, defendant filed omnibus pre-trial motions. On September 30, 2009, the first day of trial, defendant filed a written motion to declare LSA-C.Cr.P. art. 782(A) unconstitutional because it allows for a non-unanimous verdict in a felony trial. On the same day, before trial *212 commenced, the trial court denied defendant’s motion in open court and in writing.
Trial commenced on October 1, 2009. The following testimony was elicited at trial. On September 30, 2008, Deputy John Bowers and Agent Joseph Gueldner, who were working in an undercover narcotics operation, were involved in a drug transaction, which resulted in the purchase $40 worth of crack cocaine from |3defendant. At trial, Agent Gueldner testified that he and Deputy Bowers signaled defendant from their vehicle, which was a truck, at the intersection of Glendella Drive and Bishop Drive, in Avondale, and asked him for $40 worth of crack cocaine. Subsequent to speaking with the officers, defendant jumped in the bed of their truck. Defendant directed the officers to another location near the intersection of Georgetown Drive and Federal Drive, where Agent Gueldner gave defendant $20 to return with crack cocaine. Defendant returned with $20 worth of narcotics, Agent Gueldner turned over the remaining $20, and defendant again left and later returned with another $20 worth of crack cocaine. The officers then dropped defendant off at his residence located at 244 Church Street. Later that day, Agent Gu-eldner identified defendant in a photographic lineup presented by Detective Brian Rico.
Deputy Bowers testified that he rode as a passenger with Agent Gueldner when he purchased the $40 worth of crack cocaine from defendant on September 30, 2008. However, he admitted that he only observed the transaction and he did not give anything to or receive anything from defendant. He further testified that defendant referred to himself as “Big Jim.” He also identified defendant in a lineup presented to him by Detective Brian Rico.
Detective Brian Rico testified that on September 30, 2008, he participated in the narcotics investigation, which involved defendant. He further stated that he and Sergeant Joseph Williams, Sergeant Cory Wilson, and three other agents, Lisa Cal-pagno, James Matthews, and Williams Burns, established surveillance, which included video and audio, in the area of Glendella Street, “Federal,” and “Georgetown,” which is in the immediate area of Avondale. He observed and listened to the undercover officers’, Gueldner and Bowers, transaction with defendant. The evidence was field tested by Sergeant Bowers and it tested positive |4for the presence of cocaine. After the transaction was complete and the evidence secured, the videotape and the cocaine were then turned over to Detective Rico.
In addition, Detective Rico testified that he compiled the photographic lineups that were given to Agent Gueldner and Deputy Bowers, separately. He indicated that both Agent Gueldner and Deputy Bowers positively identified defendant in their separate lineups. After receiving a positive identification, Detective Rico obtained a warrant for defendant’s arrest.
On November 13, 2008, Agent Gueldner, working alone, purchased another $20 worth of crack cocaine from defendant on Glendella Drive. After defendant returned with the cocaine, he placed it on the hood of the vehicle, and Deputy Gueldner agreed to give defendant a small portion of the narcotics he purchased from defendant; however, he never actually gave defendant any cocaine.
Sergeant Joseph Williams also testified that he supervised the narcotics investigation involving defendant on November 13, 2008. After the transaction was complete, Sergeant Williams took possession of the narcotics and videotape from Agent Gueld-ner and logged it into evidence in the evidence and property division. In addition, he applied for a second warrant for *213 defendant’s arrest in reference to the November 13, 2008, drag transaction.
Daniel Waguespack, an expert in forensic science, testified that he tested two samples (State’s Exhibit 3 and 4), and further concluded that the substances were “in fact” cocaine.
Defendant testified that he was in Gateway Rehabilitation Center, at the time he was arrested, because he was having problems with drugs when he was arrested for the two counts of distribution of cocaine. His parole officer sent him there as a condition of his parole. He admitted to numerous drug convictions involving [ ¡¡distribution and also a conviction for simple burglary of a car. He also admitted to being an addict to heroin and cocaine since late 1980.
In addition, defendant honestly confessed to distributing the cocaine to Agent Gueldner and Deputy Bowers in order to feed his own addiction. He also attested that he received drugs as payment. James Veal, Sr., defendant’s father, also testified that his son had a drug problem.
Darryl Chandler, a certified substance abuse counselor for Gateway Recovery System, testified that defendant completed the civilian program and was arrested while he was waiting for housing. Defendant completed 97 days of the 100 day program.
On October 1, 2009, a 12-person jury found defendant guilty as charged on both counts of distribution of cocaine. The jury was polled, and the verdict was guilty as charged 11 to 1, on both counts. Subsequently, on October 8, 2009, defendant filed written motions for a new trial and post-judgment verdict of acquittal. The same day, after a hearing on the motions, the court denied both motions.
On October 5, 2009, prior to sentencing, the State filed a multiple bill of information, alleging that defendant was a fourth felony offender. On October 20, 2009, defendant was sentenced to serve 20 years at hard labor on Counts I and II concurrently, with credit for all time served. In addition, the first two years of each sentence were imposed without the benefit of parole, probation, or suspension of sentence. Defendant then gave an oral notice of his intent to file a notice of appeal and a motion to reconsider sentence.
On November 20, 2009, following sentencing, a hearing on the multiple offender bill of information occurred and the trial court took the matter under advisement. On January 22, 2010, defendant was adjudicated to be a second | ffelony offender on Count I, pursuant to a plea agreement. The trial court then vacated the previous sentence on Count I, and defendant was re-sentenced to 20 years at hard labor, without the benefit of probation, or suspension of sentence.
Defendant filed a timely written notice of appeal on January 27, 2010. Defendant now appeals his convictions. For the following reasons, we affirm defendant’s convictions for two counts of distribution of cocaine.

ASSIGNMENT OF ERROR NUMBER ONE

Defendant alleges that the trial court erred in denying his challenge to the constitutionality of LSA-C.Cr.P. art. 782(A). Defendant argues that his two convictions, both by a jury verdict of eleven to one, are invalid because La. Const, art. I, § 17(A) and LSA-C.Cr.P. art. 782(A) violate the Sixth and Fourteenth Amendments.
On September 30, 2009, defendant filed a motion to declare article 782(A) unconstitutional because it allowed for a non-unanimous verdict in a felony trial. *214 On that same date, September 30, 2009, the trial court denied defendant’s motion. LSA-C.C.P. art. 1880 provides that if a statute is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard. While the attorney general is not a necessary party that must be joined in the suit, he must be served in actions seeking a declaration of unconstitutionality of a statute. Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864.
In this case, the attorney general was not notified and served with a copy of defendant’s motion filed in the trial court. Since defendant did not comply with the correct procedure of notifying the attorney general of his challenge to the constitutionality of the statute, we find this issue is not properly before this Court on appeal. Thus, we decline to address the merits of this assignment of error.

\ .ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters were discovered.
First, both the original commitment and transcript are inconsistent. The commitment reflects that defendant was advised of the delays for appeal and post-conviction relief and the transcript from the original sentencing is silent. If a discrepancy exists between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). LSA-C.Cr.P. art. 930.8 requires the trial court to advise the defendant that he has two years from the date his conviction and sentence become final to apply for post-conviction relief.
The transcript from defendant’s multiple offender proceedings reflects that he was advised of the delays for post-conviction relief although the multiple offender commitment is silent. As the transcript of the multiple offender hearing prevails, it appears that defendant was properly notified of the delays for post-conviction relief. See Lynch, supra. See also State v. Harris, 01-1380, p. 4 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 390 (LSA-C.Cr.P. art. 930.8 does not require a trial court to advise the defendant of the time limitations for filing post-conviction relief more than once); State v. Young, 08-387, p. 3 (La.App. 5 Cir. 9/16/08), 996 So.2d 302, 304, writ denied, 09-631 (La.1/8/10), 24 So.3d 863, (where this Court held that the trial court properly advised defendant of the delays for post-conviction relief on remand at habitual offender sentencing).
Next, neither the habitual offender transcript nor the commitment reflects that defendant is to receive credit for time served. However, failure of a trial court to give credit for time served requires no corrective measures, as it is self-operating | .^pursuant to LSA-C.Cr.P. art. 880 [1] even on a silent record. State v. Pascual, 98-1052, p. 15 (La.App. 5 Cir. 3/30/99), 735 So.2d 98, 105.
Finally, the habitual offender sentence is illegally lenient as the trial court failed to include parole among the benefits withheld during the first two years as required by the underlying statute, LSA-R.S. 40:967(A). Although the trial judge failed to mention the restriction, such conditions *215 are deemed to exist by operation of law, under LSA-R.S. 15:301. State v. Williams, 04-1016, p. 11 (La.App. 5 Cir. 3/29/05), 901 So.2d 527, 533, writ denied, 05-1080 (La.12/9/05), 916 So.2d 1056. (citation omitted). Therefore, we find that no corrective action is necessary.
Accordingly, defendant’s convictions of two counts of distribution of cocaine and his adjudication as a second felony offender are affirmed. Further, defendant’s sentences are affirmed.

AFFIRMED

JOHNSON, J., concurs with reasons.

. LSA-C.Cr.P. art. 880 states in its entirety: "A defendant shall receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. Under the provisions of this Article, no defendant shall receive more than thirty days of jail credit for any calendar month while serving a term for consecutive sentences.”