MARC E. JOHNSON, Judge.
| ¡^Defendant, Brian Thompson, appeals his conviction for attempted second degree murder. For the reasons that follow, we affirm.
*1104 Defendant was charged in a bill of information on June 22, 2009 with attempted second degree murder of Connika Proctor in violation of La. R.S. 14:27 and 14:30.1. He pled not guilty and proceeded to trial on March 6, 2012. After a two-day trial, a 12-person jury found defendant guilty as charged by a vote of 11 to one. Thereafter, the trial court sentenced defendant to 30 years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence.[1]

FACTS

At approximately 7:00 p.m. on May 16, 2009, Deputy Mark Monson with the Jefferson Parish Sheriff's Office responded to a shooting call on Pritchard Dr. in Marre-ro. Upon his arrival, he observed the victim, Connika Proctor, lying on the front yard bleeding from multiple gunshot wounds. Deputy Monson believed |3the victim’s life was in jeopardy and asked her who shot her. The victim replied, “Brian shot me.”
The victim was transported to University Hospital where she was treated for four gunshot wounds: two to her upper chest, one to her left arm, and one to her upper back. She remained in the hospital for six days, three of which she spent in critical care, before being discharged.
At trial, the victim, age 21, testified she and defendant worked together at McDonald’s and had known each other for approximately one and a half years prior to the shooting. She stated defendant wanted to start a relationship, but she advised him she was into girls and that a relationship with him could not happen. Nonetheless, according to the victim, defendant told people that he and she were in a relationship. At some point, the victim received a phone call from defendant’s fiancée asking if she and defendant were in a relationship.
According to Trashawn Wilson, who worked with the victim and defendant at McDonald’s, the victim and defendant had “got into a fuss” two days before the shooting. On the day of the shooting, the victim was with her girlfriend at Tra-shawn’s house when defendant showed up unexpectedly yelling, “where Connika at[?]” Trashawn testified that defendant pulled up on the lawn in his Suburban and blew the horn, at which time she, the victim and the victim’s girlfriend went outside. Once they were outside, the victim and defendant engaged in a loud argument. The victim testified the argument was about the phone call she received from his fiancée and about the victim being with her girlfriend.
According to the victim, defendant attempted to place her in a choke hold during the argument, at which time she pushed him. Trashawn testified that she heard the victim say, “I’ll hit you,” and defendant responded that he would shoot her if she did. At some point during the argument, defendant walked back to his | ¿vehicle and the victim followed him. Once defendant was inside his vehicle, the victim struck defendant with her hand through the driver’s side window, and defendant immediately started shooting, striking the victim four times. Defendant drove away and never returned.
Several witnesses corroborated the victim’s version of events. Two sisters, Candace and Cynthia Cruz, who lived two to three houses away, both testified they were sitting outside in their front yard when they heard people arguing very loud *1105 ly. The sisters recognized the victim, as they had gone to school with her. Candace testified she saw the victim arguing with a man sitting inside a vehicle. She then saw the victim put her hand through the window of the car and “push” or “tap” the man on his head. The man immediately pulled out a gun, shot the victim, and drove away.
Cynthia testified she first saw the two arguing outside of the vehicle. She briefly went inside, and when she returned, the man was inside his car and the victim was standing next to the driver’s door. Cynthia saw the victim push the man on his head through the window, at which time the man shot her. Both Cynthia and Candace testified the victim was not armed with any kind of weapon.
Additionally, Joshua Winfield, who works for the Westwego police and fire department, was visiting his sister on Pritchard Dr. when he heard people arguing followed by the sound of a gunshot. He grabbed his gun and his radio and headed down the block when he heard and observed two more gunshots and two subjects. He testified that the shots were fired by a black male sitting in the driver’s seat of a Suburban, and that the last shot fired was into the victim’s back as she was moving away. Winfield stated he saw no other weapons at the scene.
Defendant subsequently turned himself into the police 16 or 17 days after the shooting.

^DISCUSSION

Sufficiency of the Evidence

In two of his three assignments of errors, defendant challenges the sufficiency of the evidence.[2] He first argues the State failed to prove beyond a reasonable doubt that he did not shoot in self-defense and, therefore, it failed to prove he committed attempted second degree murder. Second, defendant asserts the evidence shows the shooting was done in “sudden passion” and “heat of blood,” which entitled him to the responsive verdict of attempted manslaughter. He contends he met his burden of proving the mitigatory factors by a preponderance of the evidence by establishing the shooting was provoked by the victim who hit him twice during their heated argument, despite his attempt to retreat.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Defendant was convicted of attempted second degree murder. Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. Attempt is defined as “[a]ny person who, having a specific intent to commit a crime, does or omits an act for the *1106 purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended[.]” La. R.S. 14:27(A).
| fiThe crime of attempted murder requires proof of the specific intent to kill[3] and the commission of an overt act tending toward the accomplishment of that goal. State v. Abdul, 11-863 (La.App. 5 Cir. 4/24/12), 94 So.3d 801, 810. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. Id. It is well established that specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Hoffman, 98-3118 (La.4/11/00), 768 So.2d 542, 585, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000).
The evidence shows defendant armed himself with a gun, drove to the victim’s location, engaged in a verbal altercation with the victim, and then shot her four times at close range.[4] Additionally, according to the testimony of Officer Win-field, defendant fired the last shot at the victim’s back as she was moving away. Based on this evidence, we find the evidence sufficiently shows defendant had the requisite specific intent to kill the victim so as to support his conviction for attempted second degree murder.
On appeal, defendant does not deny that he shot the victim, but claims he acted in self-defense. Contrary to defendant’s assertion, it is defendant’s burden, not the State’s, in a non-homicide case to prove by a preponderance of the evidence that his actions were in self-defense. State v. Nailor, 10-1062 (La.App. 5 Cir. 11/15/11), 78 So.3d 816, 821-22, writ denied, 11-2780 (La.4/27/12), 86 So.3d 626.
The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18. According to La. R.S. 14:20(A), a homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he withdraws from the conflict in good faith. La. R.S. 14:21. In addition, while there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a rea *1107 sonable belief that deadly force was necessary to avoid the danger. State v. Theriot, 07-71 (La.App. 5 Cir. 6/26/07), 963 So.2d 1012, 1020, writ denied, 07-1598 (La.2/1/08), 976 So.2d 715.
The determination of a defendant’s culpability rests on a two-fold test: (1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and (2) whether deadly force was necessary to prevent the danger. The jury is the ultimate fact-finder in determining whether a defendant proved his condition. Theriot, 963 So.2d at 1020.
|RIn the instant case, the evidence produced at trial does not support defendant’s contention that he shot the victim in self-defense. Defendant armed himself, drove to the victim’s location, and engaged the victim in a verbal altercation. The only physical contact the victim made with defendant was pushing him to escape his choke hold on her and pushing his head with her hand. This action by the victim would not lead a reasonable person to believe he was in imminent danger of losing his life or receiving great bodily harm and that shooting the victim was necessary to prevent the danger. Nonetheless, defendant responded to this minimal physical contact with multiple gunshots, despite the fact the victim was not armed and the fact he was in a Suburban and could have driven away from the confrontation.[5] Additionally, one of the four shots was to the victim’s back.[6] Furthermore, defendant fled the scene and did not turn himself into authorities until more than two weeks after the shooting.[7] Under these facts, we find defendant failed to prove by a preponderance of the evidence that he shot the victim in self-defense.
Defendant also contends the evidence showed the shooting was done in “sudden passion” and “heat of blood” because he was provoked by the victim’s physical aggression; therefore, he argues the evidence was insufficient to support a verdict of attempted second degree murder but rather supports a verdict of attempted manslaughter.
^Manslaughter is a homicide, which would either be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his cool reflection and self-control. State v. Lombard, 486 So.2d 106, 110 (La.1986). Sudden passion and heat of blood distinguish manslaughter from murder, but they are not elements of the offense. Instead, they are mitigatory factors that may reduce the grade of the offense. State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 150, writ denied, 11-338 (La.6/17/11), 63 So.3d 1037. The defendant has the burden of proving those mitigating circum *1108 stances by a preponderance of the evidence. Id.
Whether sufficient provocation existed for the reduction of the offense to manslaughter is a question to be determined by the jury under the standard of the average or ordinary person, one with ordinary self-control. Patterson, supra. An argument alone does not constitute sufficient provocation to reduce murder to manslaughter. State v. Johnson, 06-623 (La.App. 3 Cir. 11/2/06), 941 So.2d 696, writ denied, 06-3024 (La.9/14/07), 963 So.2d 995.
In State v. Shanks, 97-1885 (La.App. 1 Cir. 6/29/98), 715 So.2d 157, the court found defendant failed to establish the mitigating factors necessary to reduce a murder conviction to manslaughter. In Shanks, the victim went to the defendant’s home to collect money the defendant owed him for a prior marijuana purchase. An argument ensued, and the victim struck the defendant: one time on his cheek and another on his neck. As the victim turned to walk out the door, the defendant picked up a shotgun and fired it one time at waist level hitting the victim. The court determine that the jury rationally concluded the homicide was not committed in sudden passion |incaused by provocation sufficient to deprive an average person of his self-control; or, that if there was such provocation, an average person’s blood would have cooled at the time the offense was committed.
Similarly, in the present case, the evidence does not show that defendant’s act of shooting the victim resulted from immediate provocation sufficient to deprive an average person of his self-control. Defendant armed himself and drove to the victim’s location screaming, “where Connika at[?]” He purposefully sought the victim out and engaged her in an argument. He physically grabbed the victim around the neck and tried to place her in a choke hold, at which time she pushed him. She then pushed or tapped defendant’s head when he was in his Suburban. We find the jury rationally found that the victim’s act of pushing defendant’s head did not rise to the level of provocation that would deprive an average person of his self-control. As such, defendant failed to prove the mitigatory factors required to reduce his conviction from attempted second degree murder to attempted manslaughter.
Accordingly, viewing the evidence in a light most favorable to the prosecution, we find the evidence sufficiently supports defendant’s conviction for attempted second degree murder. We further conclude defendant failed to carry his burden of proving by a preponderance of the evidence that the shooting was done in self-defense or that mitigatory factors necessary to reduce his conviction to attempted manslaughter were present.

Exclusion of Character Evidence

In his other assignment of error, defendant argues the trial court erred in excluding evidence of the victim’s violent nature. Defendant contends that such evidence was admissible under La. C.E. art. 404(A)(2) and |n404(B)(2), which provide exceptions to the general rule that character evidence is inadmissible. He maintains the evidence clearly showed the victim committed an overt act or hostile demonstration, which is required as a foundation to the admissibility of character evidence, when she struck the first blow and when she followed him to his car and hit him again once he was inside. Thus, defendant asserts the trial court erred in excluding the evidence on the basis he failed to lay a proper foundation for its admission.
The State contends that defendant’s lack of contemporaneous objection to the court’s ruling excluding the evidence and his failure to proffer the subject testimony precludes defendant from raising this issue on appeal. We agree.
*1109 At the conclusion of the State’s case, the defense announced during a bench conference that it intended to call Kelli Brown, a character witness who would testify regarding the victim’s propensity towards violence. The State moved to exclude Brown’s testimony, arguing that the proper foundation was lacking. The defense conceded that it had a problem with laying the appropriate foundation because defendant was not going to testify.
Thereafter, the trial court granted the State’s motion to exclude Brown’s testimony, but offered the defense the opportunity to proffer Brown’s testimony either through live testimony or an affidavit. Defense counsel requested time to confer with defendant and a recess was held. Once trial resumed, the defense stated it was prepared to proceed and called its first witness. At no time did the defense seek to proffer Brown’s testimony.
To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the | ^alleged error as well as the grounds for the objection. La.C.Cr.P. art. 841(A). The purpose behind the contemporaneous objection rule is to put the trial court on notice of an alleged irregularity so that it may cure the problem. This prevents the defendant from gambling for a favorable verdict at trial and then later utilizing appellate review to correct errors that might have easily been corrected by the trial judge upon an objection. State v. Turner, 11-870 (La.App. 5 Cir. 3/27/12), 91 So.3d 426, 436.
There is no “magic-word” formula necessary for remarks to constitute an objection. State v. Shoemaker, 500 So.2d 385, 388 (La.1987). Rather, it is sufficient that a party, at the time of the ruling, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, together with the grounds therefor. La. C.Cr.P. art. 841; Shoemaker, supra. Where the defense counsel acquiesces when the court sustains a State’s objection to the examination of a witness, that objection is waived. State v. Huizar, 414 So.2d 741, 749 (La.1982); State v. Smith, 39,698 (La.App. 2 Cir. 6/29/05), 907 So.2d 192, 200.
Moreover, when the trial court excludes evidence, such as witness testimony, error may not be predicated upon a ruling unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel. La. C.E. art. 103. This Court has consistently held that when a defendant does not make known the substance of the excluded evidence for the purpose of consideration by the trial and appellate court, the alleged error is not preserved for review on appeal.[8]
| isHere, defendant failed to object to the exclusion of Brown’s testimony. In fact, the record shows defendant acquiesced in the State’s position regarding the lack of foundation concerning Brown’s testimony. Additionally, despite being given a specific opportunity by the trial court, defendant chose not to proffer Brown’s testimony and did not make known the substance of the excluded evidence. Therefore, the record does not reflect whether Brown was in a position to offer testimony that might have substantially helped the defense. Accordingly, we find defendant failed to pre *1110 serve the excluded testimony for appeal by failing to object and failing to proffer the evidence.

ERRORS PATENT

We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5th Cir.1990). We note that the trial court failed to observe the three-day delay between conviction and sentencing as required by La.C.Cr.P. art. 873. Absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of a prematurely imposed sentence is not required. State v. Davis, 09-1109 (La.App. 5 Cir. 9/14/10), 45 So.3d 203, 214, writ denied, 10-2585 (La.4/1/11), 60 So.3d 1249.
Although defendant did not expressly waive this delay, we find the trial court’s failure to observe this delay was harmless. The purpose of the three-day delay is to allow the defendant time to file post-trial motions that must be filed between verdict and sentencing. State v. Cook, 98-848 (La.App. 5 Cir. 1/26/99), 729 So.2d 634, 640, writ denied, 99-570 (La.6/25/99), 745 So.2d 1185. In this case, defendant filed a motion for post-verdict | judgment of acquittal and a motion for new trial prior to sentencing. Additionally, defendant did not object to the sentence imposed and did not raise any sentencing issues on appeal. Accordingly, we find no corrective action is required.

DECREE

For the foregoing reasons, defendant’s conviction for attempted second degree murder is affirmed.

AFFIRMED

. The State subsequently filed a multiple offender bill of information alleging defendant to be a third felony offender. However, the multiple offender proceedings are not a part of this appeal.

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Alternatively, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, we address the sufficiency of the evidence before defendant’s other assignment of error.

. We note that although specific intent to inflict great bodily harm is sufficient to support a second degree murder conviction, attempted second degree murder requires a specific intent to kill. State v. Bannister, 11-602 (La.App. 5 Cir. 2/14/12), 88 So.3d 628, 634, writ denied, 12-628 (La.6/15/12), 90 So.3d 1060.

. Witness Candace Cruz testified defendant was only an arm's length away from the victim when he shot her.

.See State v. Osborne, 00-345 (La.App. 4 Cir. 12/6/00), 775 So.2d 607, 611, writ denied, 01-315 (La.12/14/01), 803 So.2d 985, where the court found the evidence did not support the defendant’s claim of self-defense when the victim was not armed even though the victim physically and verbally assaulted the defendant; and State v. Mincey, 08-1315 (La.App. 3 Cir. 6/3/09), 14 So.3d 613, 615-16, wherein the court found that shooting a person in response to an oncoming punch was an excessive response and was not justifiable self-defense.

. See State v. Patterson, 10-415 (La.App. 5 Cir. 1/11/11), 63 So.3d 140, 149, writ denied, 11-338 (La.6/17/11), 63 So.3d 1037, where this Court found that a gunshot wound to the back of the head indicated the defendant became the aggressor and did not support his claim of self-defense.

. See State v. Patterson, 63 So.3d at 149-50, where this Court found a defendant’s flight and attempt to avoid apprehension were inconsistent with a theory of justifiable homicide.

. See State v. Watson, 02-1154 (La.App. 5 Cir. 3/25/03), 844 So.2d 198, 210, writ denied, 03-1276 (La.5/14/04), 872 So.2d 506; State v. Stevenson, 02-79 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 347; State v. Batiste, 96-1010 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, 769, writ denied, 98-913 (La.9/4/98), 723 So.2d 954.