CHAISSON, J.
Defendant, Albert Cox, appeals his convictions and sentences for second degree murder and possession of a firearm by a convicted felon. Defense counsel has filed an appellate brief challenging evidentiary rulings by the trial court. In addition, defendant has filed a pro se supplemental brief asserting that the evidence was insufficient to support his conviction for second degree murder, that the form of the jury verdict was improper, and that the trial court failed to comply with the sentencing guidelines set forth in La. C.Cr.P. art. 894.1. We have considered the arguments presented in these briefs, and finding them to be without merit, we affirm defendant's convictions and sentences.
PROCEDURAL HISTORY
On January 14, 2016, a Jefferson Parish Grand Jury returned an indictment charging defendant with second degree murder, in violation of La. R.S. 14:30.1 (count one), and with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count two). Defendant pled not guilty to the charges at his arraignment on January 15, 2016. On May 4, 2016, defendant filed a motion to appoint a sanity commission, and after a hearing on June 22, 2016, the trial court found defendant competent to stand trial.
The matter initially proceeded to trial in December of 2016; however, at the conclusion of the proceedings, the jury was unable to reach a verdict, and a mistrial was declared. Trial commenced again before a twelve-person jury on April 10, 2017. After considering the evidence presented, the jury, on April 12, 2017, found defendant guilty as charged. Defendant thereafter filed a motion for acquittal notwithstanding the verdict and a motion for new trial. On April 19, 2017, the trial court denied these motions, and after delays were waived, sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count one and to fifteen years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count two, to run consecutively. Defendant now appeals.
FACTS
This case stems from the shooting of Cornell Woods that occurred in October of *470 2015 in a neighborhood in Kenner known as "Susan Park." At trial, Leroy Cage, a very good friend of the victim, recounted the events leading up to the shooting.
According to Mr. Cage, on October 7, 2015, he and Mr. Woods were "hanging out" after work in their neighborhood as they routinely did. As they were sitting in Mr. Woods' truck in front of Mr. Cage's house on Tupelo Street, defendant approached Mr. Woods on the driver's side of the truck, pointed his finger at him, and referred to Mr. Woods as a "bitch." Mr. Woods and Mr. Cage exited the truck, at which point Mr. Woods called defendant a "bitch," and defendant told Mr. Woods, "Whenever I walk down, I'm going to pistol whip you." Defendant then walked off in the direction of 27th Street towards his house on Jasper Street. Mr. Cage tried to deescalate the situation, telling Mr. Woods not to worry about "that fool," and they parted ways.
Shortly thereafter, as Mr. Cage was walking his dog in the neighborhood, he saw defendant, whom he knew from the neighborhood as "Wayne," walking down the street.[1] Mr. Cage greeted defendant, but defendant ignored him and kept walking. Mr. Cage noticed that defendant, who had earlier been wearing a white t-shirt and blue shorts, was now dressed all in black and kept one hand in his pocket as he headed in the direction of Mr. Woods' house.
Mr. Cage then telephoned Mr. Woods to let him know defendant was heading his way; however, despite the earlier incident, Mr. Woods expressed that he was not "worried about that fool." After Mr. Cage got off the phone with Mr. Woods, he walked into the street and saw defendant, who was about three and a half blocks away, cross to the middle of the street by Mr. Woods' house and start shooting. At trial, Mr. Cage explained that he could not see anyone's faces at that point, but he heard four shots and could see the fire from the gun. Mr. Cage called 9-1-1, took his dog back to his house, told his wife that "Wayne just shot Cornell," and then got into his vehicle and drove to Mr. Woods' house.
In the meantime, officers from the Kenner Police Department responded to the scene. Upon his arrival, Detective Devin Diedling observed the victim lying face up, breathing sporadically, with an apparent gunshot wound to his chest. Mr. Woods was transported to the hospital where he later died from his injuries.[2] During the course of their investigation, officers spoke to Mr. Cage about the information he had regarding the incident. As a result of this information, Detective Vincent Miranti, the lead detective in this case, compiled a photographic lineup and showed it to Mr. Cage, who positively identified defendant as the individual he knew as "Wayne."
Following this positive identification, Detective Miranti applied for a search warrant for defendant's house. However, before he got the chance to execute the warrant,[3] he was informed that relatives of *471 defendant had called to provide information regarding the case. Detective Miranti spoke with Laquittia Davis and Keokuk Davis, cousins of defendant. Laquittia told Detective Miranti, and subsequently testified at trial, that defendant called her on October 8, 2015, and told her that he "shot someone," which she was able to establish was Mr. Woods. Keokuk stated that Laquittia called him after speaking with defendant, which led him to call defendant. He questioned defendant, asking if what he told Laquittia was true, to which defendant affirmatively responded. Rene Cox, another cousin of defendant, went to the Kenner Police Department and provided information to Sergeant Jeff Adams. According to Ms. Cox, defendant had also called her and told her that he had killed someone.[4]
Based on the information obtained through the course of the investigation, Detective Miranti secured an arrest warrant for defendant. On October 8, 2015, after being located by the U.S. Marshals in Baton Rouge at the bus station, defendant was arrested and was subsequently transported to the Jefferson Parish Correctional Center.
COUNSELED ASSIGNMENTS OF ERROR
Exclusion of Evidence Regarding Defendant's Mental State (Assignment of Error Number One)
In his first assignment of error, defendant contends that his rights to confrontation and to present a defense were violated by the trial court's erroneous ruling that prohibited the introduction of evidence regarding his mental limitations at the time of his purported confessions to family members.
Prior to the first trial, the State filed a motion in limine to exclude evidence of insanity or mental defect pursuant to La. C.Cr.P. art. 651. In the motion, the State argued that evidence of defendant's mental status or alleged mental defect was inadmissible because defendant pled not guilty and did not place his sanity at issue through a formal plea of not guilty by reason of insanity. At the November 17, 2016 hearing on the motion, defense counsel responded that she should be allowed to cross-examine witnesses regarding defendant's mental capacity. She specifically asserted that she did not intend to present evidence of defendant's mental limitations in an attempt to negate any specific element of the offenses or to show diminished capacity. Rather, defense counsel maintained that she wanted to introduce the evidence of defendant's mental limitations in order to show bias against him on the part of some of the witnesses who were family members. In addition, defense counsel asserted that evidence of defendant's mental capacity would demonstrate that the manner in which he communicated his statements to family members would reveal that he is not a "normal communicator." After hearing arguments of counsel, the trial court ruled as follows:
I will say this: I think we're all in agreement on what the law provides. And I think we're all in agreement that you are allowed to conduct cross-examination. The problem is simply this: It's the question that you present to a witness to determine whether they are biased or prejudiced and whether that is an appropriate question. So, what I am going to do is hold this open, and when *472 you are ready to ask those questions, you approach the Bench and you ask to get clearance from the Court before you do it.
Prior to the start of defendant's second trial, defense counsel reurged her opposition to the State's motion in limine , arguing that it has become "even more pertinent that the defense be able to ask a few questions of the witnesses, his family members that know him, regarding his ability to read and write, about his vocabulary, and essentially his low intellectual functioning in order to combat the State's evidence that he is communicating inculpatory statements." The trial court ruled: "Based upon the arguments of counsel and the fact that no additional briefing has been submitted to the Court, nor any additional evidence to substantiate the argument of the defense, the Court's previous ruling remains in effect, and it is not admissible and prohibited."
Defendant now challenges this ruling. He specifically contends that the trial court's exclusion of evidence concerning his mental state at the time of the purported confessions to family members under the guise of La. C.Cr.P. art. 651 denied him his constitutional rights to confrontation and to present a defense.
Both the Sixth Amendment of the United States Constitution and Article I, Section 16 of the Louisiana Constitution guarantee a criminal defendant the right to present a defense. However, this right does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Lirette , 11-1167 (La. App. 5 Cir. 6/28/12), 102 So.3d 801, 813, writ denied , 12-1694 (La. 2/22/13), 108 So.3d 763.
The Sixth Amendment of the United States Constitution also guarantees an accused in a criminal prosecution the right to confront the witnesses against him. The Confrontation Clause of the Louisiana Constitution specifically and expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. Art. I, § 16. Confrontation not only means the ability to confront the witnesses physically but also to secure for the opponent the opportunity of cross-examination, which is its main and essential purpose. Cross-examination is the principal way to test the believability and truthfulness of the testimony, and it has traditionally been used to impeach or discredit the witness. State v. Robinson , 01-273 (La. 5/17/02), 817 So.2d 1131, 1135. For the reasons that follow, we find that defendant's constitutional rights to present a defense and to confront and cross-examine witnesses were not violated by the trial court's evidentiary ruling relating to his mental state at the time of his statements to family members.
Clearly, pursuant to La. C.Cr.P. art. 651, when a defendant is tried upon a plea of "not guilty," evidence of insanity or mental defect at the time of the offense shall not be admissible. State v. Necaise , 466 So.2d 660, 664 (La. App. 5th Cir. 1985). In his appellate brief, defendant acknowledges the prohibition of evidence of mental defect pursuant to this article. However, he asserts that he is not attempting to introduce evidence of his mental deficiencies at the time of the offense, but rather is trying to show his mental state at the time of his statements to his cousins in order to allow the jury to better weigh the inculpatory statements. Defendant reasons that since Article 651 specifies "at the time of the offense," it necessarily implies that evidence of insanity or mental defect at times other than "at the time of the offense" is not prohibited. Therefore, he contends *473 that the trial court erred in using Article 651 to exclude evidence relating to his mental functioning at the time of his inculpatory statements to his cousins.
We first note that we do not necessarily agree with defendant's assessment that the trial court used Article 651 to exclude this evidence. Rather, from the exchange at the hearing on the State's motion in limine , it appears that the trial court excluded this evidence on the basis of relevancy. In particular, when addressing defendant's arguments at the hearing, the trial court noted a clear distinction between using this evidence to show bias as opposed to using it to obtain the witnesses' personal impressions of defendant's alleged mental defect. The trial court commented that the witnesses' personal impressions of defendant's mental defect was not "relevant at all," and that it could be appropriate to show bias or prejudice, but "to get their mental impression of him is something completely different."
Relevant evidence is defined in La. C.E. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. La. C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. The trial court is accorded great discretion in evidentiary rulings, and absent a clear abuse of that discretion, rulings regarding relevancy and admissibility of evidence will not be disturbed on appeal. State v. Hicks , 16-462 (La. App. 5 Cir. 2/8/17), 213 So.3d 458, 465, writ denied , 17-445 (La. 11/13/17), --- So.3d ----, 2017 WL 5563209.
Louisiana does not recognize the defense of diminished capacity. A mental disease or defect short of insanity cannot serve to negate an element of the crime. For that reason, such evidence is not relevant to the issue of a defendant's guilt or innocence. Moreover, evidence of a mental disease or defect affecting a defendant at the time of an offense is inadmissible, whether it is an organically caused mental condition, or a psychologically or emotionally induced mental condition. State v. Wise , 13-247 (La. App. 5 Cir. 11/19/13), 128 So.3d 1220, 1225, writ denied , 14-253 (La. 9/12/14), 147 So.3d 703.
In the present case, defendant did not intend to introduce evidence of his mental deficiencies at the time of his statements to his relatives to show diminished capacity or to negate an element of the offenses. Rather, defendant maintained that he wanted to cross-examine certain witnesses about his mental state to show bias or prejudice against him on the part of his relatives,[5] to show that he is not a "normal communicator" and thus combat the State's evidence that defendant communicated inculpatory statements, and to allow the jury to better weigh the inculpatory statements heard by them. Regardless of the reasons defendant intended to introduce this evidence[6] or the basis for *474 the trial court's evidentiary ruling, we find that the trial court did not abuse its discretion by limiting the cross-examination of these witnesses with regards to defendant's mental limitations at the time of his statements to them.
When the trial court excludes evidence, such as witness testimony, error may not be predicated upon a ruling unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel. La. C.E. art. 103. This Court has consistently held that when a defendant does not make known the substance of the excluded evidence for the purpose of consideration by the trial and appellate court, the alleged error is not preserved for review on appeal. State v. Thompson , 12-409 (La. App. 5 Cir. 12/11/12), 106 So.3d 1102, 1109, writ denied , 13-111 (La. 8/30/13), 120 So.3d 258.
In the present case, defendant has not shown that the trial court's exclusion of evidence relating to his alleged mental limitations has affected a substantial right because he has made no showing of how the excluded evidence was relevant and material to the defense. Defendant made only general allegations that his mental deficiencies were relevant to show bias or prejudice on the part of witnesses or to attack their credibility relating to his incriminating statements to them. Defendant did not specify the substance of the evidence that he planned to introduce, nor did he proffer the questions that he wanted to present on cross-examination. We further note that defendant presented no evidence to support his allegations regarding his limited mental abilities.
Moreover, as noted by the State in its appellate brief, defendant was afforded an opportunity on cross-examination to inquire about the circumstances of the calls and the witnesses' perceptions of his state during his calls. On direct examination, Laquittia testified that on the morning of October 8, 2015, she received a phone call from defendant that lasted about fifteen minutes. Laquittia stated that defendant sounded sober during their telephone conversation although he informed her that he was "getting high." In response to questioning by defense counsel on cross-examination, Laquittia reiterated that defendant told her that he was "getting high" and "smoking rocks and getting loaded." Further, Laquittia acknowledged that defendant previously struggled with a drug problem and previously "got loaded a lot." However, when asked, Laquittia maintained that defendant was in the right state of mind as he was talking to her on the phone. On re-direct examination, Laquittia responded that defendant was coherent when he was talking to her. In addition, Ms. Cox, who spoke with defendant on the evening of October 8, 2015, testified on cross-examination that she was aware of defendant's previous drug problem but could not tell whether he was intoxicated during their phone conversation. When asked about defendant's speech, Ms. Cox replied, "I can't say he was slurred. I don't know."[7] Thus, defense counsel was permitted to question these witnesses about the circumstances surrounding their phone calls with defendant.
Based on the foregoing reasons, and in light of the great discretion afforded a trial court in evidentiary rulings, we find no merit to the arguments presented by defendant in this assigned error and specifically find that defendant's constitutional *475 rights to present a defense and to confront and cross-examine witnesses were not violated by the trial court's exclusion of evidence relating to defendant's mental limitations at the time of his incriminating statements to his relatives.
Introduction of Defendant's Prior Felony Convictions (Assignment of Error Number Two)
In his second assigned error, defendant contends that the trial court erred in allowing the State to introduce evidence of his prior felony convictions in order to establish his status as a convicted felon for purposes of La. R.S. 14:95.1.
In the present case, defendant was charged with possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1.[8] In the indictment, the State alleged that defendant had previously been convicted, under case number 07-1389 of the 24th Judicial District Court, of distribution of cocaine, in violation of La. R.S. 40:967(A), and possession with intent to distribute marijuana, in violation of La. R.S. 40:966(A), and under case number 12-2873 of the 24th Judicial District Court, of possession of cocaine, in violation of La. R.S. 40:967(C).
Prior to trial, defendant filed a motion in limine seeking to exclude evidence of these prior convictions as unduly prejudicial and offering to stipulate that he had a prior felony conviction to satisfy one of the elements of his charge of possession of a firearm by a convicted felon. In the alternative, defendant alleged that the State should be limited to introduction of evidence of only one conviction. The trial judge denied defendant's motion and allowed the introduction of these felony convictions at trial. Defendant now challenges this ruling and asserts that since he offered to stipulate to his status as a felon, the evidence was irrelevant and prejudicial, and further served only to cast him "in the worst possible light."
In State v. Ball , 99-428 (La. 11/30/99), 756 So.2d 275, a prosecution for possession of a firearm by a convicted felon, the Louisiana Supreme Court held that the State could introduce evidence of the name and nature of the defendant's prior conviction of simple burglary of an inhabited dwelling, even though the defendant had offered to stipulate that he had been convicted of a prior felony. The court reasoned that proof of one of the enumerated felonies is an essential element of the crime proscribed by La. R.S. 14:95.1, and that the State is entitled to prove its case by evidence of its own choice. Further, the State cannot be robbed of the moral force of its case merely because a stipulation is offered, and it does not have to accept defendant's stipulation in lieu of presenting evidence. State v. Ball , 756 So.2d at 280.
Likewise, in the present case, proof of a prior specifically enumerated felony conviction is an essential element under La. R.S. 14:95.1, and thus, the State was permitted to introduce evidence relating to defendant's prior conviction, despite the fact that defendant had offered to stipulate that he had been convicted of a prior felony.
We now turn our attention to defendant's argument that the State should be limited to introduction of evidence of *476 only one conviction. In State v. Sanders , 357 So.2d 492, 494 (La. 1978), the Louisiana Supreme Court held that the use of more than one prior conviction is permissible as proof of an essential element of the crime charged, stating as follows:
Evidence of both of defendant's previous felony convictions was admissible at trial as proof of an element of the crime charged and the manner in which the present offense was committed, proof of either prior conviction being sufficient to support defendant's conviction for the present offense. Hence, the trial judge properly permitted introduction in evidence of both of defendant's previous felony convictions.
In State v. Washington , 00-1542 (La. App. 5 Cir. 2/14/01), 782 So.2d 639, writ denied , 01-940 (La. 2/8/02), 807 So.2d 859, the defendant was charged with being a felon in possession of a firearm based on two predicate felony convictions. He filed a motion in limine seeking to limit the State's proof to one felony conviction, which was denied by the trial court. On appeal, the defendant argued that proof of more than one felony conviction was unduly prejudicial. This Court, citing Sanders , held that the trial court's denial of the motion in limine was proper. Washington , 782 So.2d at 644-45.
Accordingly, in light of this jurisprudence, we find no error in the trial court's denial of defendant's motion in limine , in which he sought to exclude evidence of his prior convictions in light of his offer to stipulate to his status as a convicted felon.
PRO SE ASSIGNMENTS OF ERROR
Sufficiency of the Evidence (Pro Se Assignments of Error Numbers One and Two)
In his pro se supplemental brief, defendant challenges the sufficiency of the evidence used to convict him of second degree murder. He specifically contends that the State failed to prove that the shooting was not an accident and that he had the specific intent to kill or inflict great bodily harm on Mr. Woods. Defendant also contends that the trial court erred in denying his motions for acquittal notwithstanding the verdict and new trial, which were based on insufficient evidence.[9]
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Joseph , 16-349 (La. App. 5 Cir. 12/14/16), 208 So.3d 1036, 1042-43, writ denied , 17-77 (La. 4/7/17), 218 So.3d 109.
When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must *477 exclude every reasonable hypothesis of innocence." This is not a separate test from the Jackson standard but rather provides a helpful basis for determining the existence of reasonable doubt. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten , 99-181 (La. App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied , 99-2057 (La. 1/14/00), 753 So.2d 208.
Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Whether a defendant possessed the requisite intent in a criminal case is a question for the trier-of-fact, and a review of the correctness of this determination is guided by the Jackson standard. State v. Spears , 05-964 (La. 4/4/06), 929 So.2d 1219, 1224. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. State v. Gant , 06-232 (La. App. 5 Cir. 9/26/06), 942 So.2d 1099, 1111, writ denied , 06-2529 (La. 5/4/07), 956 So.2d 599.
A specific intent to kill may be inferred from the intentional use of a deadly weapon such as a knife or gun. State v. Cochran , 09-85 (La. App. 5 Cir. 6/23/09), 19 So.3d 497, 508, writ denied , 09-1742 (La. 3/26/10), 29 So.3d 1249. The act of aiming a lethal weapon and discharging it in the victim's direction supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Gant , 942 So.2d at 1111.
On appeal, defendant claims that the State failed to prove that he had the specific intent to kill or to inflict great bodily harm on Mr. Woods. At trial, the State presented the testimony of Mr. Cage who testified that on October 7, 2015, as he and Mr. Woods were sitting in Mr. Woods' truck in front of Mr. Cage's house, defendant approached Mr. Woods, pointed his finger at him, and referred to Mr. Woods as a "bitch." Mr. Woods and Mr. Cage then exited the truck, at which point Mr. Woods called defendant a "bitch," and defendant told Mr. Woods, "Whenever I walk down, I'm going to pistol whip you." After this incident, defendant walked off in the direction of his house, and Mr. Woods went home. Shortly thereafter, Mr. Cage saw defendant walking towards Mr. Woods' home with one hand in his pocket. Mr. Cage saw defendant cross to the middle of the street and start shooting in the direction of Mr. Woods' house.
In addition, defendant's relatives, Mr. Davis, Ms. Davis, and Ms. Cox, all testified regarding defendant's inculpatory statements made to them regarding the shooting. Further, the evidence showed that U.S. Marshals arrested defendant in Baton Rouge at the bus station.[10]
Based on the foregoing, we conclude that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support defendant's conviction for second degree murder. Therefore, the trial court did not abuse its discretion in denying defendant's motions for new trial and for acquittal *478 notwithstanding the verdict, which were based on the sufficiency of the evidence.
Failure to Comply with La. C.Cr.P. art. 811 (Pro Se Assignment of Error Number Three)
In his next pro se assignment of error, defendant contends that the trial court failed to comply with the provisions of La. C.Cr.P. art. 811 regarding the receipt and recordation of the jury verdict, thereby violating his Sixth and Fourteenth Amendment rights under the United States Constitution.
La. C.Cr.P. art. 811 provides for the receipt and recordation of the verdict as follows:
If the verdict is correct in form and responsive to the indictment, the court shall order the clerk to receive the verdict, to read it to the jury, and to ask: "Is that your verdict?" If the jury answer "Yes," the court shall order the clerk to record the verdict and shall discharge the jury.
In his pro se brief, defendant claims that no verdict is contained in the record, and further claims that the record fails to reflect that the verdict of the jury was delivered to the judge in open court or that the court ordered the clerk to receive and record the verdict in accordance with the statutory requirements. Defendant's assertions are not supported by the record.
The transcript reflects that when the jury returned to the courtroom after deliberations, the trial court asked the foreperson of the jury whether a verdict had been reached. After the foreperson replied in the affirmative, the trial court asked her to hand the verdict to the bailiff and thereafter asked the clerk to publish the verdict. The transcript reflects that the clerk then published the verdict as follows:
Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana, Case Number 15-6462, State of Louisiana versus Albert Cox.
Verdict, Count 1. "We, the jury, find the defendant guilty of Count 1, second degree murder, Gretna, Louisiana, this 12th day of April, 2017." Signed by the foreperson, Melissa Tatman.
Verdict, Count 2. "We, the jury, find the defendant guilty of Count 2, possession of a firearm by a convicted felon, Gretna, Louisiana, this 12th day of April, 2017." Signed by the foreperson, Melissa Tatman.
Defense counsel requested polling of the jury, which revealed a unanimous verdict. The court thereafter stated: "The verdict is proper to form and to number. The verdict of the jury shall be the judgment of the Court."
In addition to the transcript, the minute entry reflects the following:
At 1:24 p.m. the jury returned with a verdict. The verdict returned-GUILTY as charged as to Count 1 and 2-signed Melissa Tatman, foreperson. The verdict was declared legal and ordered recorded. The jury was discharged.
Lastly, a written verdict form is contained in the record, which shows that defendant was found guilty of second degree murder and possession of a firearm by a convicted felon. The verdict form is dated, signed by the foreperson, and contained in the record.
As the record clearly reflects that the verdict was in compliance with the statutory requirements for receipt and recordation, we find no merit to defendant's arguments in this assigned error.
Failure to Comply with La. C.Cr.P. art. 894.1 (Pro Se Assignment of Error Number Four)
In this final pro se assignment of error, defendant argues that the trial court failed to comply with the sentencing guidelines *479 set forth in La. C.Cr.P. art. 894.1.[11] Specifically, defendant claims that the trial court failed to consider his age, family ties, marital status, health, employment record, prior criminal record, seriousness of offense, or likelihood of rehabilitation when it imposed a mandatory life sentence for second degree murder and a fifteen-year sentence for possession of a firearm by a convicted felon, to run consecutively.
In the present case, defendant filed a written motion to reconsider sentence alleging that "[t]he sentence is constitutionally excessive" and that "[t]he statute under which the defendant was sentenced calls for an unconstitutional mandatory minimum." However, defendant did not raise the issue of the trial judge's failure to consider the sentencing guidelines set forth in La. C.Cr.P. art. 894.1, and he is now precluded from raising this particular issue on appeal. La. C.Cr.P. art. 881.1 ; State v. Hunter , 11-787 (La. App. 5 Cir. 4/24/12), 94 So.3d 797, 800. Accordingly, our review of defendant's sentences is limited to the issue of whether they are unconstitutionally excessive. State v. Bonilla , 15-529 (La. App. 5 Cir. 2/24/16), 186 So.3d 1242, 1261, writ denied , 16-567 (La. 5/2/16), 206 So.3d 881, cert. denied , --- U.S. ----, 137 S.Ct. 239, 196 L.Ed.2d 183 (2016).
The Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Smith , 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622. When imposing sentences, a trial judge has broad discretion in imposing a sentence within statutory limits, and a reviewing court may not set aside a sentence in absence of manifest abuse of discretion. State v. Bonilla , 186 So.3d at 1261.
Defendant's life sentence for his conviction of second degree murder is mandatory under La. R.S. 14:30.1. A mandatory minimum sentence is presumed constitutional. State v. Royal , 03-439 (La. App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied , 03-3172 (La. 3/19/04), 869 So.2d 849. Nevertheless, even though defendant received the mandatory minimum sentence, that sentence may still be reviewed for unconstitutional excessiveness. State v. Bonilla , 186 So.3d at 1262. To rebut the presumption of constitutionality, the defendant must show that: "[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." State v. Johnson , 97-1906 (La. 3/4/98), 709 So.2d 672, 676 ; State v. Royal , 857 So.2d at 1174.
Where a defendant failed to present any evidence or make any argument regarding a downward departure from the *480 mandatory minimum sentence at his sentencing hearing, this Court has found that the defendant failed to carry his burden and concluded that his sentence was not excessive. State v. Hughes , 14-487 (La. App. 5 Cir. 11/25/14), 165 So.3d 978, 996, writ denied , 14-2683 (La. 10/9/15), 178 So.3d 1001 ; State v. Royal , 857 So.2d at 1174.
In this case, defendant did not present any evidence or make any argument regarding a downward departure from the mandatory minimum sentence at his sentencing hearing. Accordingly, defendant has failed to rebut the presumption of constitutionality of the mandatory life sentence, and as a result, we conclude that his sentence is not unconstitutionally excessive.
We now turn our attention to defendant's fifteen-year sentence for his conviction of possession of a firearm by a convicted felon. The sentencing range for this offense is imprisonment at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence. La. R.S. 14:95.1(B). Based on our review of the circumstances of this case as well as sentences imposed in similar cases, we cannot say that defendant's mid-range sentence of fifteen years is unconstitutionally excessive. We particularly note that this Court has upheld sentences of fifteen years imposed on defendants convicted of violating La. R.S. 14:95.1. See State v. James , 13-666 (La. App. 5 Cir. 2/12/14), 136 So.3d 113, 117-18, and State v. Caffrey , 08-717 (La. App. 5 Cir. 5/12/09), 15 So.3d 198, 204-05, writ denied , 09-1305 (La. 2/5/10), 27 So.3d 297.
Accordingly, we find that the sentences imposed on defendant in this case are not unconstitutionally excessive.
ERRORS PATENT REVIEW
We have reviewed the record for errors patent and have found no errors that require corrective action.
DECREE
Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences for second degree murder and possession of a firearm by a convicted felon.
AFFIRMED

Mr. Cage testified that he knew defendant "all his life," and that he and defendant are friends although they do not "hang out" together.

Dr. Dana Troxclair performed the autopsy on Mr. Woods. She testified that the cause of death was a gunshot wound to his chest. She opined that it was a distant gunshot, meaning the shooter was more than three feet away from the victim, based on the lack of stippling or soot around the wound.

Sergeant George Hoffman with the Kenner Police Department executed the search warrant on defendant's home and seized two black t-shirts; however, nothing else of evidentiary value was found.

Phone records were admitted into evidence that corroborate the testimony of Mr. Davis, Ms. Davis, and Ms. Cox, in that they spoke with defendant on the phone on October 8, 2015.

The Louisiana Code of Evidence permits a witness to be cross-examined on any matter relevant in the case, including credibility. La. C.E. art. 611(B). Indeed, this Court recognizes that impeaching a witness for bias or interest and exposing a witness' motivation in testifying are proper functions of cross-examination. See State v. Micelotti , 07-808 (La. App. 5 Cir. 4/15/08), 984 So.2d 847, 854, writ denied , 08-950 (La. 12/12/08), 997 So.2d 559.

It is noted that defendant's arguments regarding the purposes for which he wanted to use this evidence changed throughout the course of these proceedings.

Although defendant does not focus on the issue of bias on appeal, we note that Ms. Cox acknowledged on cross-examination that she and defendant did not always get along.

In order to convict a person of being a felon in possession of a firearm, the State must prove: 1) the defendant possessed the firearm; 2) the defendant had a prior conviction for an enumerated felony; 3) the defendant possessed the firearm within ten years of the prior conviction; and 4) the defendant had the general intent to commit the offense. State v. Alexander , 12-807 (La. App. 5 Cir. 5/16/13), 118 So.3d 1138, 1148, writ denied , 13-1454 (La. 1/10/14), 130 So.3d 320.

Defendant filed both a motion for acquittal notwithstanding the verdict and a motion for new trial in the district court, challenging the sufficiency of the evidence used to convict him. The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. With regards to the motion for new trial, this Court has recognized that the denial of a motion for new trial based on the verdict being contrary to the law and evidence is not subject to review on appeal; however, both the Louisiana Supreme Court and this Court have still addressed sufficiency claims under these circumstances. State v. Bazley , 09-358 (La. App. 5 Cir. 1/11/11), 60 So.3d 7, 18-19, writ denied , 11-282 (La. 6/17/11), 63 So.3d 1039.

Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Gant , 942 So.2d at 1111.

In State v. Lovick , 00-1833 (La. App. 5 Cir. 5/16/01), 788 So.2d 565, 573, writ denied , 01-1836 (La. 5/10/02), 815 So.2d 833, this Court noted: "Failing to articulate reasons for the sentence as set forth in La. C.Cr.P. art. 894.1, when imposing a mandatory life sentence is not error. The court has no discretion in imposing a mandatory life sentence and therefore setting forth the factors considered in imposing sentence would be an exercise in futility."